**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ARIC A BURNS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-00979-E |
| | § | |
| INTERMODAL CARTAGE COMPANY et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Intermodal Cartage Company, LLC (IMCG) and Aaron Stokely's Motion for Summary Judgment, which seeks dismissal of all of Plaintiff Aric Burns's claims. (ECF No. 37). Burns has further moved for leave to strike an appendix attached to Defendants' reply brief. (ECF No. 55). Having carefully considered the motions; the Parties' briefing; appendices; and the applicable law, for reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment. (ECF No. 37). The Court GRANTS Burns's motion for leave and DENIES Burns's Motion to Strike as moot. (ECF No. 55).

### I.   BACKGROUND

#### A.  Intermodal Cartage Company, Burns, Florence, and Stokely

Intermodal Cartage Company (IMCG) is a marine drayage company—"a trucking company that hauls containers." (ECF No. 39 at 50). IMCG had a facility in the Dallas-Fort-Worth (DFW) region referred to as the Haslet Depot. (ECF No. 39 at 50-51, 66). During the pertinent period, Harrison Hoof served as IMCG's Senior Vice President. (ECF No. 39 at 22-23, 49, 66). Hoof oversaw the DFW region including the Haslet Depot, and Hoof worked from Wilmer, Texas.

(ECF No. 39 at 22-23, 49, 66-67). Stokely managed the Haslet Depot as the Haslet Operations Manager—overseeing day-to-day functions for the Haslet Depot. (ECF No. 39 at 71). Christopher Florence supervised Haslet Depot employees who operated cranes and other heavy machinery used to move freight containers from May 2017 to April 27, 2020. (ECF No. 39 at 6, 66).

Burns worked at the Haslet Depot as an equipment operator from 2005 to August 17, 2017, and from November 27, 2018, to June 2, 2020. (ECF No. 39 at 77, 83, 87-88, 125). Florence supervised Burns. (ECF No. 39 at 102). Florence and Burns were in a same-sex romantic relationship during Burns's employment at IMCG. (ECF No. 39 at 84-85, 102-03). Prior to 2020, Florence and Burns did not discuss their relationship with other IMCG employees and did not otherwise indicate their sexual orientation. (ECF No. 39 at 54-55, 66-67, 73, 85-86). Stokely did not state or take action to indicate he was aware that Burns was in a same-sex relationship. (ECF No. 39 at 86). Hoof did not learn of Burns's same-sex relationship with Florence until March 2020, when Florence informed Hoof of the relationship. (ECF No. 39 at 66).

Regarding the relationship between Florence and Burns and Hoof's knowledge, thereof, Burns testified it was his relationship with a supervisor, and not Burns's sexual orientation, that motivated Hoof's decision to discharge Burns. (ECF No. 39 at 101-02).

### B. Stokely's Sexual Harassment of Burns and 2019 Harassment Investigation

Burns testified that Stokely repeatedly touched Burns on his crotch with his hands throughout his employment at IMCG. (ECF No. 49 at 44-48). On October 22, 2019, job applicant Christina Powell raised an accusation to IMCG Human Resources (HR) that Stokely had "interacted via text messages in an inappropriate and unprofessional manner for the applicant." (ECF No. 39 at 9-10). HR manager Angeles Galera investigated the allegation—ending the investigation with a final warning on November 14, 2019. (ECF No. 39 at 38-41; ECF No. 48 at

10; ECF No. 49 at 68). Burns testified that after this report and investigation in November 2019, Stokely stopped touching Burns's crotch. (ECF No. 39 at 88-89; ECF No. 49 at 44-48).

### C. Burns's Work Separation

Burns began an extended absence from work beginning April 8, 2020, which Hoof understood to be COVID-19 related. (ECF No. 39 at 34-35, 67, 125). Burns presented a doctor's note that indicated a return-to-work date of April 23, 2020. (ECF No. 39 at 34, 125). Galera communicated with Burns on his leave. (*See, e.g.*, ECF No. 39 at 34-35). Burns did not return to work on April 23, 2020; instead, Galera contacted Burns, who stated (i) he had anxiety related to COVID-19; (ii) his roommate (Florence) had a low-grade fever; and (iii) he looked forward to returning to work on April 24, 2020. (ECF No. 39 at 34). Burns did not return to work on April 24, 2020. (ECF No. 39 at 34). Burns texted Stokely a doctor's note on April 26 and 27, 2020, which included a return-to-work date of May 4, 2020. (ECF No. 39 at 34). On April 28, 2020, Galera sent Burns a copy of a form Notice of Eligibility and Rights & Responsibilities in accordance with the Family Medical Leave Act (FMLA)—referred herein as "FMLA Paperwork." (ECF No. 39 at 27-34). Burns had until May 13, 2020, to return his completed FMLA Paperwork. (ECF No. 39 at 20, 27, 43).

Burns did not return to work on May 4, 2020. (ECF No. 39 at 34). On May 5, 2020, Burns submit another doctor's note with a return-to-work date of May 11, 2020. (ECF No. 39 at 34). Burns did not return to work on May 11, 2020. (ECF No. 39 at 34, 125). Burns did not submit completed FMLA Paperwork on May 13, 2020. Instead, on May 13, 2020, Burns submit another doctor's note with a return-to-work date of May 18, 2020. (ECF No. 39 at 34). Burns did not return to work on May 18, 2020. (ECF No. 39 at 34, 125). Instead, on May 21, 2020, Burns submit another doctor's note with a return-to-work date of May 25, 2020. (ECF No. 39 at 34). Burns did

not return to work on May 25, 2020. (ECF No. 39 at 34, 125). On May 27, 2020, Burns communicated to Galera that he was going to a doctor's appointment on May 28, 2020, and that he would update Galera. (ECF No. 39 at 34). On May 28, 2020, Galera asked for an update from Burns, but Burns did not respond. (ECF No. 39 at 34). As of June 1, 2020, Burns had not contacted Galera or otherwise provided an update relating to his doctor's appointment. (ECF No. 39 at 34).

Burns's last date of work was April 8, 2020. (ECF No. 39 at 34, 67, 125). As of June 2, 2020, Burns's last doctor's note had a return-to-work date of May 25, 2020. (ECF No. 39 at 34). Burns did not return to work at any time after April 8, 2020. (ECF No. 39 at 34, 67, 125). From May 28, 2020 to June 2, 2020, Burns did not communicate with Galera. (ECF No. 39 at 34-35, 42-46). On June 3, 2020, Burns emailed Galera that IMCG should receive his completed FMLA Paperwork by the end of that day. (ECF No. 39 at 35). But, IMCG received no completed paperwork at any time. (ECF No. 39 at 35, 125; ECF No. 49 at 25).

IMCG discharged Burns on June 4, 2020—stating that Burns:

> was advised to provide an update on 5/28/2020 regarding his physician's visit and did not contact Human Resources or management. Mr. Burns did not contact anyone on 5/28/2020, 6/1/2020, or 6/2/2020. Three consecutive days of no call, no show are [sic] considered job abandonment.

(ECF No. 39 at 125). Only Hoof and Galera were involved in the decision to discharge Burns. (ECF No. 39 at 56, 67). Stokely was not involved in the decision to discharge Burns. (ECF No. 56, 72). Stokely did not learn of Burns's discharge until after the work separation. (ECF No. 39 at 72). After Burns's discharge, another operator at the Haslet Depot—Cecil Shipp—assumed Burns's work duties. (ECF No. 39 at 61-62).

### D. Post-Termination Discussion of Return to Work

After the termination, Galera continued to communicate with Burns regarding his FMLA leave and concerns regarding Stokely. (ECF No. 39 at 24-25, 42-45). Galera requested Burns to

have the FMLA Paperwork emailed. (ECF No. 39 at 121). However, IMCG never received any completed FMLA Paperwork from Burns—neither by fax nor by email. (ECF No. 39 at 24-25, 121). Galera testified that IMCG would have re-hired Burns if he had provided his FMLA Paperwork or a doctor's note:

> [Question]:   Are you saying that if he had returned a [FMLA] certification that certified a need for FMLA leave for . . . May 28th, June 1, and June 2, then you would have overturned the separation?
>
> [Galera]:   Yes. Even – I think even if we would have received a doctor's note, we would have returned – or revisited and overturned the termination. We just didn't hear back from him. And then when we did, there wasn't any back up for the time that he was out.

(ECF No. 39 at 24-25).

### E.  Procedural History

On October 12, 2020, Burns filed a Employment Discrimination Complaint Form (Charge) with the Texas Workforce Commission. (ECF No. 39 at 115-18). The Charge marks that discrimination took place in "1/_/2020." (ECF No. 39 at 116). The Charge marks that Burns complained of discrimination on June 9, 2020. (ECF No. 116 at 131). The Charge asserts that Burns "began to experience hostility about [his same-sex relationship with Florence] around June 3, 2020. (ECF No. 39 at 116).

On May 2, 2022, Burns initiated this litigation against IMCG and Stokely. (ECF No. 1). As amended, Burns asserts claims against IMCG of (i) sexual harassment-based hostile work environment under Title VII; (ii) sexual orientation discrimination under Title VII; (iii) retaliation based under Title VII; (iv) interference in violation of the FMLA; and (v) retaliation in violation of the FMLA. (ECF No. 40-1 at 3-4). Burns also asserts claims against Stokely of assault and battery. (ECF No. 40-1 at 3).

Defendants' Motion for Summary Judgment seeks to dismiss all of Burns's claims. (ECF Nos. 38-39). *Inter alia*, Defendants assert Burns's claims for hostile work environment based on Title VII, assault, and battery are each time-barred due to the applicable statute of limitations. Burns has responded. (ECF Nos. 46-47). Defendants have replied, (ECF No. 53), and attached an appendix to their reply, (ECF No. 54). Burns has moved for leave to file a motion to strike this appendix attached to the reply. (ECF No. 55). Having been fully briefed, these motions are ripe for consideration.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, because Defendants bear the burden of proof on its affirmative defenses at a trial, they "must establish 'beyond peradventure all of the essential elements of the . . . defense[s].'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting *Fontenot*, 780 F.2d at 1194).

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. . . . "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

> [i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

## III.   STATUTE OF LIMITATIONS

The Court next addresses Defendants' asserted affirmative defense of statute of limitations as it applies to Burns's claim for hostile work environment, assault, and battery.

### A. Sexual Harassment Hostile Work Environment, EEOC Charge, and Statute of Limitations

Texas law requires that a claimant seeking to file for employment-related sexual harassment must first file a complaint with the Texas Workforce Commission (TWC) within 300 days of the unlawful employment practice. Tex. Labor Code Ann. § 21.202(a-1). "This deadline is mandatory and jurisdictional." *Barr v. Stripes L.L.C.*, No. 21-20278, 2022 WL 1044695, at *4 (5th Cir. Apr. 7, 2022) (discussing a claim of employment discrimination) (internal quotation

omitted). The Parties agree that 300 days is the controlling period of time for Burns to have filed a complaint of sexual harassment with the TWC.[1]

Defendants challenge that Burns did not timely file his Charge as to his sexual harassment-hostile work environment claim—asserting that the last incident of such harassment occurred in November 2019, at the latest. In response, Burns asserts the last instance of touching occurred in March 2020. Counting backward from the Charge's date of October 12, 2020, sexual harassment actionable under Texas law had to have occurred on or after December 17, 2019. Thus, the date of the final incident of sexual harassment is determinative on whether Burns's sexual harassment hostile work environment is barred on summary judgment by the 300-day statute of limitation.

During Burns's deposition, he testified:

> [Question]:    Do you contend that you were harassed during that timeframe at work, from November 18 to, let's say, March 2020?
>
> [Burns]:    **I can give you the dates of after Christina Powell, [Stokely] no longer messed with me, and he no longer talked with any of us because, quote, "he didn't trust one mf-er down there because we had to report to HR everything that we knew." And a lot of the guys were very upset because they felt like it was – we were going to get fired, and it was like a defamation of character, and just that case.**

(ECF No. 39 at 88) (emphasis added in bold). Burns continued:

---

[1] As filed, Burns's Charge was submitted to the TWC's Civil Rights Division. (ECF No. 39 at 115). The TWC has a worksharing agreement with the EEOC, which makes each agency "the other['s] ... agent for the purpose of receiving and drafting charges." *See Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000). Based on this worksharing agreement "and the desire to avoid duplication of efforts, courts consider the filing of a charge with the TWC as satisfying both the state and federal administrative exhaustion requirements." *Venters v. Walgreen Co.*, No. CV H-20-2272, 2022 WL 1290910, at *4 (S.D. Tex. Apr. 29, 2022) (citing *Vielma*, 218 F.3d at 462). "Once the TWC receive[s a] complaint, proceedings [are] deemed instituted within the meaning of § 2000-5(e)(1)." *Williams v. City of Port Arthur*, No. 120CV00527MJTZJH, 2022 WL 1183293, at *2 (E.D. Tex. Feb. 25, 2022) (citing *Griffin v. City of Dallas*, 26 F.3d 610 at 613 (5th Cir. 1994)), *report and recommendation adopted*, No. 1:20-CV-00527, 2022 WL 866407 (E.D. Tex. Mar. 23, 2022); *see also Whitley v. Dr Pepper Snapple Grp., Inc.*, No. 4:16-CV-00362, 2016 WL 7326625, at *4 (E.D. Tex. Dec. 16, 2016) (finding that initial charge filed with the TWC Civil Rights Division was also considered to have been filed with the EEOC); *Cook v. Lee Coll.*, 798 F. Supp. 417, 421–22 (S.D. Tex. 1992) ("charges filed with the TCHR during the effective period of the worksharing agreement are deemed received by the EEOC for purposes of timeliness").

---

MEMORANDUM OPINION AND ORDER

| | |
|---|---|
| [Question]: | "Aaron Stokely repeatedly grabbed my private parts." |
| [Burns]: | Correct. |
| [Question]: | Okay. When do you contend that happened? |
| [Burns]: | As I said before, I mean, I've answered it many times. Throughout -- throughout my -- you know, my time working there. |
| [Question]: | So what – what do you contend? What . . . do you mean by "grabbed" at this point? [. . .] |
| [Burns] | . . . The key thing, and him poking the private part, and then acting like you're going to hit somebody in the crotch, and then just barely, you know, grabbing it like, and yeah. And that was – as I said before, sometimes weekly a couple of times. Sometimes it was biweekly. Sometimes it was monthly. **It happened throughout my career**, up until 2017, when I left . . . [a]nd after, **for the time up until Christina Powell. And that's whenever he cut all ties with everybody and didn't talk to no one.**<br>. . . .<br>[. . .] in baseball we call it a "cup check." . . . So it was like a cup check that turns around. It's not a cup check, by all means. |
| [Question] | And **your testimony is that [the harassment] happened** at some point **until the Christina Powell incident?** |
| [Burns]: | **That's exactly right.** |
| [Question]: | **And then that ceased after Christina Powell?** |
| [Burns]: | **Completely ceased.** As I said, he was very distant. And one day when I was talking to him he said he doesn't "trust any mf-ers down there." And I felt like the retaliation was going to begin for us testifying – or talking to HR, which, honestly, we didn't have a choice. |

(ECF No. 49 at 46-48) (emphasis added in bold). Burns further testified:

| | |
|---|---|
| [Question]: | I understand in your testimony earlier . . . is that after you – **after the Christina Powell investigation then you – all behavior from Mr. Stokely to you – physical behavior –** |
| [Burns]: | Um-hmm. |

---

MEMORANDUM OPINION AND ORDER                    Page **10** of 43

| | |
|---|---|
| [Question]: | **– whatever, ceased.** |
| [Burns]: | **Yeah. It was quite nice. He stopped coming downstairs. He stopped – he stopped coming out to the shop and hanging out with the guys, and he told me exactly the reason why, as I stated before.** |

(ECF No. 39 at 90) (emphasis added in bold). The Powell Investigation ended on November 14, 2019. (ECF No. 49 at 68). The record contains an employee counseling notice about Stokely that relates to sexual harassment; the notice explains "any other incidents of this nature will result in termination" and includes a handwritten statement from Stokely on the notice that such conduct "will never happen again." (ECF No. 48 at 10). Evidence in the record shows that Stokely stopped touching Burns's crotch on or about November 14, 2019.

Burns directs the Court to a later portion of Burns's deposition, which contains the following exchange:

| | |
|---|---|
| [Question]: | When do you believe was the last time that [Stokely] subjected you to an unwanted touching in your crotch area? |
| [Burns]: | Before I was terminated was the last time that I can remember. March. |
| [Question]: | Of 2020? |
| [Burns]: | 2020. |

(ECF No. 39 at 108). Burns asserts that this testimony regarding the last incident of Stokely's "unwanted touching"—whether it occurred in November 2019 or March 2020—precludes summary judgment on this statute of limitations defense. (ECF No. 47 at 20-21).[2] The Court disagrees.

---

[2] Burns directs the Court to no other summary judgment evidence that Stokely's final touching of Burns occurred in March 2020.

"First, it has long been the rule that 'a party [may not] defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.'" *Lindsey v. Bio-Med. Applications of Louisiana, L.L.C.*, 9 F.4th 317, 324 (5th Cir. 2021) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996). Such an affidavit that impeaches, without explanation, sworn testimony is colloquially referred as a "sham affidavit." *See Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 235 (5th Cir. 2018) (discussing the same). The Fifth Circuit has explained:

> In considering the summary-judgment record, and although the court may not weigh the evidence or make credibility determinations, it must, of course, decide what evidence may be considered. *E.g.*, *Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991) ("we review the trial court's evidentiary rulings, which define the summary judgment record, and we give these rulings their due deference"), *abrogated on other grounds by Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court's evidentiary rulings regarding the competency of evidence are reviewed for abuse of discretion. *E.g.*, *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2012) ("a district court's decision whether to apply the sham affidavit rule should be reviewed for abuse of discretion").
>
> . . . .
>
> [The sham affidavit] rule provides a "party may not manufacture a dispute of fact merely to defeat a motion for summary judgment". *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). This is because, if "a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony", "the utility of summary judgment as a procedure for screening out sham isues of fact" would be greatly diminished. *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).
>
> . . . .
>
> Ramos' suggestion that only an affidavit that comes after testimony can be a sham is misguided. ***It is the competency, rather than timing, of evidence with which the sham-affidavit rule is concerned.*** As the third circuit explained, "no principle [ ] cabins sham affidavits to a particular sequence.... Indeed, cross-examining the affiant in a later deposition seems the better way to find the flaws in a bogus affidavit". *In re CitX Corp., Inc.*, 448 F.3d 672, 679–81 (3d Cir. 2006). Therefore, ***so long as inconsistent statements were "made by [Ramos] the deponent and [Ramos] the affiant", the court may refuse to consider his declaration as competent evidence.*** *E.g.*, *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43–44 (2d Cir. 2000).

*Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223, 234–35 (5th Cir. 2018) (emphasis added in bold italics). The Sixth Circuit—collecting cases from other Circuits—has extended this concept to a party's "internally contradictory deposition testimony" in regard to summary judgment:

> Courts have repeatedly held that a plaintiff's internally contradictory deposition testimony cannot, by itself, create a genuine dispute of material fact. *See, e.g.*, *Pina v. Children's Place*, 740 F.3d 785, 799 (1st Cir. 2014) (holding that summary judgment was appropriate where plaintiff's admissions in deposition undermined her claims); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming summary judgment where plaintiff's deposition testimony was "replete with inconsistencies" (citation omitted)); *United States v. 1980 Red Ferrari*, 827 F.2d 477, 480 n.3 (9th Cir. 1987) (affirming summary judgment where only evidence was plaintiff's "incredible and contradictory" deposition testimony); *Hayes v. Norfolk S. Corp.*, 25 Fed. Appx. 308, 314 (6th Cir. 2001) (holding that appellant's "contradictory" and "confused" testimony was insufficient to create fact issue). ***Although the non-moving party is entitled to all reasonable inferences when evaluating a summary judgment motion, when a plaintiff's claims are only supported by his "own contradictory and incomplete testimony . . . no reasonable person would undertake the suspension of disbelief necessary to credit the allegations made in his complaint."*** *Jeffreys*, 426 F.3d at 555 (citation and alteration omitted).

*Bush v. Compass Group USA, Inc.*, 683 Fed. Appx. 440, 449 (6th Cir. 2017) (emphasis added in bold italics).

The Court agrees with the reasoning from the Sixth Circuit. *See Bush*, 683 Fed. Appx. at 449. Here, Burns's later testimony that Stokely subjected him to "unwanted touching" on his crotch in March 2020, is unspecific, conclusory, and does not satisfy his burden on summary judgment. *See Douglass*, 79 F.3d at 1429; *Ragas*, 136 F.3d at 458. Viewing all evidence and drawing all reasonable inferences in the light most favorable to Burns, it is not reasonable to infer the final incident of Stokely sexually harassing Burns occurred in March 2020. *See Reeves*, 530 U.S. at 150. The evidence that an "unwanted touching" occurred in March 2020 is not such that a reasonable jury could find in Burns's favor on his claim of sexual harassment hostile work environment.

Burns nevertheless makes an argument that his testimony was not inconsistent because he discussed the Powell investigation by email on June 9, 2020—that (i) his assertions about the Powell Investigation related to the June 9, 2020, timeframe and (ii) Stokely did not sexually harass him after June 9, 2020. (ECF No. 47 at 33). However, the record does not support such an inference as—discussed above—Burns was already fired on June 9, 2020 and had not been at work since April 8, 2020. (ECF No. 39 at 34, 67, 125). The record does not support that Burns would have knowledge—(i) that Stokely stopped coming out to the shop and hanging out with the workers or (ii) that the employees feared retaliation by getting fired for discussing Powell with HR—after Burns stopped working at IMCG. (ECF No. 39 at 88, 90).

Apart from the statement during Burns's deposition discussed above, Burns directs the Court to no other competent summary judgment evidence that Stokely subjected Burns to sexual harassment in March 2020.[3] *See Douglass*, 79 F.3d at 1429; *Ragas*, 136 F.3d at 458. The Court must conclude that—based on the competent summary judgment record—the final incident of Stokely touching Burns occurred on November 14, 2019. (ECF No. 39 at 38-41; ECF No. 48 at 10; ECF No. 49 at 68). Burns filed his Charge on October 12, 2020—328 days after the final incident of Stokely touching Burns. (ECF No. 39 at 117). Thus, Burns failed to file his Charge of sexual harassment within 300 days of the unlawful employment practice. Tex. Labor Code § 21.202(a-1). The Court must conclude Defendants have established the corresponding statute of limitations affirmative defense beyond peradventure. *Fontenot*, 780 F.2d at 1194. The Court

---

[3] The Parties refer the Court to Burns's handwritten notes made during his deposition, but no Party briefs how or why such notes would constitute competent summary judgment evidence. The Court has found no law to support that such notes made during a deposition constitute competent summary judgment evidence, so the Court has disregarded such evidence. *See generally Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (discussing not competent summary judgment evidence).

GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of sexual harassment hostile work environment as barred by statute of limitations.

**B. Assault and Battery Claims, Statute of Limitations, COVID-19 Emergency Order(s)**

Under Texas law, there is a two-year statute of limitations period for bringing personal injury claims—including those for assault and for battery. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ("a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues."); *see, e.g.*, *Andrade v. Teichroeb*, 341 F. Supp. 3d 681, 687 (N.D. Tex. 2018) (applying two-year statute of limitation to an assault claim); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010) ([T]he general statute of limitations applicable to personal-injury actions requires that suit be brought not later than two years after the day the cause of action accrues.) (internal quotation omitted).[4] "Generally, accrual occurs on the date 'the plaintiff first becomes entitled to sue the defendant based upon a legal wrong attributed to the latter', even if the plaintiff is unaware of the injury." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1140 (5th Cir. 1997) (quoting *Zidell v. Bird,* 692 S.W.2d 550, 554 (Tex. Ct. App. 1985)). As briefed, neither Party challenges the application of the two-year statute of limitations.

Defendants challenge that Burns did not timely file his assault and battery claim(s) because his lawsuit was filed in excess of two years after the final incident of Stokely touching Burns. (ECF No. 38 at 15-17). Relying on *Polly v. Houston Lighting & Power Co.*, Defendants assert Burns's claims for assault and battery are foreclosed because—as in *Polly*—Burns waited two years and five months after the alleged assault and battery occurred to file his suit. 803 F. Supp. 1, 7 (S.D. Tex. 1992), *report and recommendation adopted in part*, 825 F. Supp. 135 (S.D. Tex. 1993)

---

[4] "[I]n the civil context, Texas caselaw uses the terms 'assault,' 'battery,' and 'assault and battery' interchangeably, and we intend no distinctions among these terms." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010).

("Polly chose to wait until . . . five months beyond the two-year statute of limitations, to file this action. Accordingly, Polly's charges of assault, battery, and intentional infliction of emotional distress against Wallace, Ubernosky, Powell, and Buchman are time-barred.").

In response, Burns directs the Court to the Texas Supreme Court's Eighth Emergency Order Regarding COVID-19 State of Disaster (Eighth Emergency Order)—specifically briefing:

> The Texas Supreme Court tolled the statute of limitations for state law claims for 70 days due to COVID pandemic: "Any deadline for the filing or service of any civil case is tolled from March 13, 2020[.]" Eighth Emergency Ord. Regarding COVID-19 State of Disaster, 597 S.W.3d 844 (Tex. 2020).
>
> Thus, even assuming the last time Defendant Stokely subjected Burns to an unwanted touching in the crotch area was March 1, 2020, the statute of limitations would run on May 10, 2022. Because Burns filed suit May 2, 2022, his assault claim is not barred by limitations.

(ECF No. 447 at 23). Burns conflates a statute of limitation—a deadline to file or serve a case— with the accrual date for an injury—the date a plaintiff first becomes entitled to sue. *Compare* Tex. Civ. Prac. & Rem. § 16.003(a) (denoting the two-year deadline to file personal injury claim), *with Vaught*, 107 F.3d at 1140 (explaining that the date of accrual for an injury occurs when the plaintiff first becomes entitled to sue). Burns argues that the Eighth Emergency Order added 70 days to claims accrued in March 2020. (ECF No. 447 at 23). But, the Eighth Emergency Order contains no such language.

> ***Any deadline for the filing or service of any civil case is tolled from March 13, 2020, until June 1, 2020,*** unless extended by the Chief Justice of the Supreme Court. This does not include deadlines for perfecting appeal or for other appellate proceedings, requests for relief from which should be directed to the court involved and should be generously granted.

*Eighth Emergency Order Regarding COVID-19 State of Disaster*, 597 S.W.3d 844 (Tex. 2020) (emphasis added in bold italics). The Eighth Emergency Order only tolled the statute of limitation of claims "from March 13, 2020, until June 1, 2020"; the order contains no language or application

as to the accrual date of any injury. *See* Eighth Emergency Order Regarding COVID-19 State of Disaster, 597 S.W.3d 844 (Tex. 2020). The Eighth Emergency Order has no statute of limitation tolling effect on filings made in May of 2022, when Burns initiated this suit. *See* Eighth Emergency Order Regarding COVID-19 State of Disaster, 597 S.W.3d at 844-45.

Here, Burns filed his initial Complaint on May 2, 2022. (ECF No. 1). Applying the two-year statute of limitation, the alleged assault and battery had to have occurred within the two preceding years—on or after May 2, 2020. As discussed hereabove, the last incident of Stokely touching Burns occurred in November 2019—over two years before May 2, 2022. Assuming *arguendo* that Stokely's final touching occurred sometime in March 2020—that accrual date would still be over two years before May 2, 2022. It is further undisputed that Burns stopped appearing for work at IMCG on April 8, 2020, so Burns and Stokely could not have been in the physical presence of one another in May 2022 such that physical sexual harassment could occur.

The record and initial pleading show that Burns failed to bring his suit for assault and battery within the applicable two-year statute of limitation. Defendants have established the corresponding the statute of limitations affirmative defense beyond peradventure. *Fontenot*, 780 F.2d at 1194. The Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claims for assault and battery.

## IV.   EMPLOYMENT CLAIMS

The Court next addresses the prima facie elements of Burns's claims asserted under the FMLA and Title VII.

### A. Analytical Frameworks

Because Burns's claims allege discrimination, retaliation, or FMLA interference, the Court provides the following burden-shifting framework analyses, which are common to these claims.

*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("To succeed on a claim of intentional discrimination under Title VII, Section 1983, or Section 1981, a plaintiff must first prove a prima facie case of discrimination.") (collecting cases); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014) (addressing ADA discrimination claim under burden-shifting framework); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (addressing FMLA retaliation under burden-shifting framework).

      i.     *Employment Discrimination*

"A plaintiff can prove a claim of intentional discrimination by either direct or circumstantial evidence." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *see, e.g., Gaalla v. Brown*, 460 F. App'x 469, 479 (5th Cir. 2012) (addressing racial discrimination). Regarding direct evidence, the Fifth Circuit has explained:

> Direct evidence [of discriminatory intent] is evidence which, if believed, proves the fact without inference or presumption.... It includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action.

*Gaalla*, 460 F. App'x at 479 (internal quotations omitted). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Russell*, 235 F.3d at 222. "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003). The Fifth Circuit has explained the three-step *McDonnell Douglas* framework as follows:

> Under that framework, [a plaintiff] must make out a prima facie case of discrimination. *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021). If she succeeds, [a defending employer] must respond with a "legitimate, nondiscriminatory reason" for terminating [the plaintiff]. *Id.* at 282. Then the burden shifts back to [the plaintiff], who must counter with substantial evidence that [the defending employer's] proffered reason is pretextual. *Id.*

*Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022). The second step of the *McDonnell Douglas* framework requires an employer's *production* of a legitimate, nondiscriminatory reason for terminating a plaintiff, but this second step "can involve no credibility assessment." *Reeves*, 530 U.S. 133, 142 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)).[5] Regarding the third step of the *McDonnell Douglas* framework, "the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination." *Russell*, 235 F.3d at 222 (citing *McDonnell Douglas*, 411 U.S. at 804).

ii.    *Employment Retaliation*

"A plaintiff may prove a retaliation claim through direct or circumstantial evidence." *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 275 (5th Cir. 2006). "Without direct evidence, the plaintiff must establish his cause of action using circumstantial evidence and the *McDonnell Douglas* burden-shifting framework," discussed above. *Jones*, 212 F. App'x at 275. "If the plaintiff establishes a prima facie case, then the defendant must show a non-retaliatory, legitimate reason for the adverse action." Again, this second step of the *McDonnell Douglas* framework requires an employer to produce evidence of a non-retaliatory, legitimate reason for the adverse action—but requires no burden of persuasion. *See Jones*, 212 F. App'x at 275; *Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) ("We agree that [t]he ultimate burden of persuading the trier of fact that the

---

[5] Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

defendant [retaliated] against the plaintiff remains at all times with the plaintiff.") (internal quotation omitted). "Once the defendant meets this burden, the plaintiff must in turn offer evidence to create a genuine issue of material fact that the defendant's reason is not true, but is instead a pretext for discrimination." *Jones*, 212 F. App'x at 275; *see, e.g.*, *Gee*, 289 F.3d at 345 (discussing the same).

### iii.   *FMLA Interference*

Similar to claims of discrimination and retaliation, a plaintiff must establish a prima facie case of FMLA interference. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Once the plaintiff states a prima facie claim, it is the employer's burden on summary judgment to articulate "a legitimate non-discriminatory reason for the employment action at issue," which then may be rebutted if "the plaintiff raise[s] an issue of material fact that the employer's proffered reason was pretextual." *Caldwell*, 850 F.3d at 245; *see, e.g.*, *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (discussing the same on an FMLA job reinstatement interference claim).[6]

### B.   **Title VII Claims**

Burns asserts three claims under Title VII: (i) discrimination based on sexual orientation; (ii) retaliation based on Burns's complaint of sexual harassment; and (iii) hostile work environment based on sexual harassment. Burns asserts no direct evidence on any of these claims. Thus, the Court next addresses each claim under the three-step *McDonnell Douglas* framework.

### i.   *Discrimination Based on Sexual Orientation*

Under Title VII, "*it shall be an unlawful employment practice for an employer--to discharge any individual*, or otherwise to discriminate against any individual with respect to his

---

[6] *See also Tatum v. S. Co. Services, Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) ("Once an employee propounds a *prima facie* case of interference or retaliation, []the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[]") (internal quotation omitted).

compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). In other words, "an employer who intentionally treats a person worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 658 (2020). "It doesn't matter if other factors besides the plaintiff's sex contributed to the decision." *Bostock*, 590 U.S. at 659. "[I]f changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred." *Bostock*, 590 U.S. at 659-60. "Title VII protects every American, regardless of sexual orientation or transgender status. It simply requires proof of sex discrimination." *Olivarez v. T-mobile USA, Inc.*, No. 20-20463, 2021 WL 1945680 (5th Cir. May 14, 2021) (internal quotation omitted).

Absent direct evidence of sex-based discrimination, Burns must make a prima facie showing under the *McDonnell Douglas* framework that

> **(1)** [he] is a member of a protected class; **(2)** [he] was qualified for the position [he] sought; **(3)** [he] suffered an adverse employment action; and **(4)** others similarly situated but outside the protected class were treated more favorably.

*Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 997–98 (5th Cir. 2022) (emphasis added in bold); *see, e.g., Newbury v. City of Windcrest, Texas*, 991 F.3d 672, 679 (5th Cir. 2021) (discussing sex discrimination claim under Title VII); *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019) (discussing sex discrimination under Title VII). "To satisfy the "similarly situated" prong, the employee carries out a comparator analysis[;] . . . [u]nder this analysis, the employee must establish that [he] was treated less favorably than a similarly situated employee outside of [his] protected class in nearly identical circumstances." *Saketkoo*, 31 F.4th at 998 (internal citation omitted, footnote omitted). As briefed, the Parties do not dispute (i) that Burns

was a member of a protected class—a homosexual man; (ii) that Burns was qualified for his position; or (iii) that Burns suffered an adverse employment action—discharge.

Defendants challenge that Burns cannot show that he was treated less favorably than "others who were deemed to have abandoned their jobs by failing to report to work or otherwise call in for three consecutive days." (ECF No. 38 at 26). Burns's briefing in response to his claim of sex discrimination is scant—providing no legal argument or citation to the record regarding this fourth element of his prima facie case. (ECF No. 47 at 25).[7] There is no evidence in the record of an other similarly situated employee who was outside of Burns's protected class who was treated more favorably. Thus, Burns has failed to make a prima facie showing for his sex discrimination claim. *Saketkoo*, 31 F.4th at 998.

The Parties both refer the Court to cases that discuss discrimination that each use a disjunctive fourth element for a prima facie case: that the plaintiff "was replaced by someone outside the protected class, *or* that other similarly situated persons were treated more favorably." *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004). However, the Court declines the application of this disjunctive fourth element as neither of those cases concern a claim for sex discrimination based on discharge and Title VII. *See Septimus*, 399 F.3d at 609 (discussing gender-based discrimination relating to denial of promotion); *Rachid*, 376 F.3d at 309 (discussing discrimination under the Age Discrimination in Employment Act (ADEA)).

---

[7] The entirety of Burns's briefing as to his sex discrimination prima facie case is as follows:

> Each of these factors is met by the evidence in this case. Burns was discharged, he was regarded as a very good employee, he was gay and he was replaced by an employee who was not gay.

(ECF No. 47 at 25).

---

Nevertheless—assuming *arguendo* the Court applied this disjunctive fourth element for a sex discrimination case, thereby addressing whether Burns was replaced by someone outside the protected class—the Court would reach the same result. "[A]n employee 'has not been 'replaced' . . . when his former duties are distributed among other co-workers.'" *Griffin v. Kennard Indep. Sch. Dist.*, 567 Fed. Appx. 293, 294–95 (5th Cir. 2014) (unpublished) (quoting *Rexses v. Goodyear Tire & Rubber Co.,* 401 Fed. Appx. 866, 868 (5th Cir.2010) (unpublished)) (citing *Dulin v. Dover Elevator Co.,* 139 F.3d 898, 1998 WL 127729, at *3 (5th Cir.1998) (unpublished); *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990)). "[W]hen an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced." *Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir. 1998) (citing *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 423 (1st Cir.1996); *Barnes,* 896 F.2d at 1465). Here, the record shows another operator who was already working at IMCG assumed Burns's work duties. (ECF No. 39 at 61-62). No evidence in the record shows Burns was otherwise "replaced," and Burns offers no argument or citation to the record as to this element. (ECF No. 47 at 25). Thus, the record is devoid of evidence that Burns was "replaced."

The Court concludes Burns has failed to make a prima facie showing of his sex discrimination claim based on Title VII. The Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of sex discrimination based on Title VII.

### ii.    *Retaliation for Complaining of Sexual Harassment*

As pleaded and briefed, Burns's theory of retaliation is based on the adverse employment action of his discharge. To establish a prima facie case of retaliation, a Plaintiff must show the following:

> **1)** [he] engaged in a protected activity; **2)** [he] suffered an adverse employment action; and **3)** there is a causal connection between the two.

---

*Owens*, 33 F.4th at 835 (emphasis added in bold) (addressing a retaliation claim under Title VII and 42 U.S.C. § 1981). "'An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII.'" *Thompson v. Somervell Cnty., Tex.*, 431 F. App'x 338, 341 (5th Cir. 2011) (quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (internal citations omitted)). "Adverse employment decisions are ultimate employment decisions such as hiring, granting leave, discharging, promoting, ... compensating, or demoting. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (internal quotation omitted).

"A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's protected activity.'" *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)). Thus, an employer cannot retaliate against an employee if the employer's decisionmaker for the adverse employment decision did not know that the employee had engaged in protected activity at the time of the alleged retaliatory actions. *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999) (concluding employer could not have retaliated against employee because the employer's decisionmaker did not now of employee's alleged protected activity); *see also Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."). "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case." *Owens*, 33 F.4th at 835 (quoting *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3

(5th Cir. 1997)). "To establish causality, the protected activity and the adverse action must have 'very close' temporal proximity, and 'a five month lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation.'" *Newbury*, 991 F.3d at 679 (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)).

As briefed, Burns asserts his complaint of sexual harassment to Galera sometime in May of 2020 constituted protected activity. It is undisputed that Burns suffered an adverse employment action—his discharge. Defendants contest whether there is evidence of a causal link between Burns's complaint of sexual harassment and his discharge. (ECF No. 38 at 30-34). Burns's briefing directs the Court to no evidence as to his prima facie showing for a retaliation claim. (ECF No. 47 at 25-26).

Here, the record shows that only Hoof and Galera were involved in the decision to discharge Burns. (ECF No. 39 at 56, 67). The record contains evidence that Burns complained of Stokely's sexual harassment to Galera sometime in May 2020—after Burns was on leave from work since April 8, 2020. (ECF No. 39 at 34-35; ECF No. 49 at 136-37). Although Burns avers that Hoof knew of Burns's sexual harassment complaint, Burns directs the Court to no corresponding evidence, and the Court has found none. (ECF No. 47 at 26). Instead, the record shows Hoof had no knowledge of such a complaint from Burns:

> [Question]:   Okay. In mid-May -- around mid-May, did Angeles Galera ever communicate with you and inform you that Aric Burns had raised an issue of sexual harassment with her regarding Aaron Stokley?
>
> [Hoof]:   No.
>
> [Question]:   Did Christopher Florence ever raise with you the issue of Aaron Stokley sexually harassing Aric Burns?
>
> [Hoof]:   No.

(ECF No. 39 at 62). The record is devoid of evidence that Hoof knew of Burns's sexual harassment complaint at the time of his discharge. The record contains no evidence that Galera's knowledge of Burns's sexual harassment claim related to IMCG's decision to discharge Burns. The Court concludes that Burns has failed to make a prima facie showing on the third element his claim of retaliation based on Title VII. The Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of retaliation based on Title VII. In his response brief, Burns further concedes his claim of Title VII retaliation "that he was retaliated against for participating in the Christina Powell investigation." (ECF No. 47 at 8). The Court GRANTS Defendants' Motion for Summary Judgment as to that retaliation claim without further discussion.

iii.   *Sexual Harassment Hostile Work Environment*

As discussed above, the statute of limitation bars Burns's sexual harassment hostile work environment claim. Nevertheless, assuming *arguendo* that this claim was timely, the Court provides the following discussion.

Title VII prohibits sexual harassment as a form of employment discrimination. *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc) ("There are two types of sexual harassment under Title VII: quid-pro-quo and hostile-environment harassment.").[8] Here, Burns's pleadings and the Parties briefing only concern the latter, "hostile-environment harassment" type of sexual harassment claim.[9] *See Boh Bros.*, 731 F.3d at 453; *see generally Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). Nevertheless, "Title VII does not prohibit all harassment." *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir.

---

[8] "A claim of 'hostile environment' sex discrimination is actionable under Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986).

[9] Neither the pleadings nor the Parties' briefing support discussion or adjudication of Burns's claims as the former "quid-pro-quo" type of sexual harassment, so the Court pretermits any according discussion or adjudication. *See generally, e.g.*, *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221 (5th Cir. 2023) (discussing both types of sexual harassment).

2019) (citing *Meritor Sav. Bank*, 477 U.S. at 67). Rather, "[i]t makes harassing conduct unlawful when it results in the employer 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Meritor Sav. Bank*, 477 U.S. at 67 (quoting 42 U.S.C. § 2000e-2(a)(1)) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993); *Meritor Sav. Bank*, 477 U.S. at 64-67).

> An employee who brings a hostile work environment claim must show that:
>
> **(1)** [he] belongs to a protected class; **(2)** [he] was subjected to harassment; **(3)** the harassment was based on sex; **(4)** the harassment affected a term, condition, or privilege of employment; and **(5)** the employer knew or should have known of the harassment **and** failed to take remedial action.

*Saketkoo*, 31 F.4th at 1003 (citing *Septimus*, 399 F.3d at 611) (emphasis added in bold); *see, e.g.*, *See Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001) (discussing the same).

Regarding the third element, the Fifth Circuit has established a two-step process for evaluating same-sex harassment cases:

> Per *Oncale*, in *La Day*, we determined that the employee must first demonstrate that the sexual harassment was "***discrimination because of sex***." *Id.* at 478. The employee may make this showing by: **(1)** establishing that the harasser made "explicit or implicit proposals of sexual activity and providing credible evidence that the harasser was homosexual;" **(2)** demonstrating that the harasser was "motivated by general hostility to the presence of members of the same sex in the workplace;" or **(3)** offering "direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.*

*Russell v. Univ. of Tex. of Permian Basin*, 234 Fed. Appx. 195, 201 (5th Cir. 2007) (citing *La Day v. Catalyst Tech., Inc.,* 302 F.3d 474 (5th Cir. 2002)) (emphasis added in bold and bold italics). The "critical issue" in determining whether workplace activities constitute harassment based on sex is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, (1998) (citation omitted). "Title VII is not a shield against harsh

treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981); *see also, e.g.*, *Reine v. Honeywell Intern. Inc.*, 362 Fed. Appx. 395, 397 (5th Cir. 2010) (discussing the same).

Regarding the fifth element, "[w]hen a supervisor is the harasser, the employee need not establish the fifth element." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 221 (5th Cir. 2023) (citing *Boh Bros.*, 731 F.3d at 453); *see generally Boh Bros.*, 731 F.3d at 462-66. However, the employer may seek to establish an *Ellerth/Faragher* affirmative defense to defeat a claim for sexual harassment hostile work environment. *See Boh Bros.*, 731 F.3d at 462 (discussing the *Ellerth/Faragher* affirmative defense).

> Under the Supreme Court's *Faragher* and *Ellerth* decisions, an employer has an affirmative defense to a hostile work environment sexual-harassment claim if **(1)** "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior", and **(2)** the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise". *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 778, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

*McDaniel v. Shell Oil Co.*, 350 Fed. Appx. 924, 926 (5th Cir. 2009) (emphasis added in bold) (unpublished).

Defendants do not dispute (i) that Burns belonged to a protected class; (ii) that Burns was subjected to sexual harassment; or (iii) that the harassment affected a term, condition, or privilege of Burns's employment. However, Defendants challenge the third element—whether the harassment was based on sex—and, next, seek to establish an *Ellerth/Faragher* affirmative defense. (ECF No. 38 at 21-25). In response, Burns provides scant briefing as to the third element[10]

---

[10] As to the third element of Burns's prima face case on his sexual harassment hostile work environment claim, Burns's briefing states only:

> Finally, Defendant Intermodal attempts to argue that there is no evidence that Defendant was based on sex. First, Defendant Stokely does not try to characterize the contact as horseplay, rather he

and—as to Defendants' Ellerth/Faragher defense—appears to argue IMCG did not exercise reasonable care to prevent and correct sexually harassing behavior. (ECF No. 47 at 15-20).

Regarding the third element, Defendants assert there is no evidence "showing that any alleged harassment was motivated by discrimination based on Burn's sex or sexual orientation." (ECF No. 38 at 22). Burns directs the Court to no evidence (i) that Stokely made explicit or implicit proposals of sexual activity; (ii) that Stokely was homosexual;[11] (iii) that Stokely was motivated by general hostility to the presence of men in the workplace; or (iv) that offers direct, comparative evidence about how Stokely treated members of both sexes in a mixed-sex workplace. *See Russell*, 234 Fed. Appx. at 201 (enumerating the process for evaluating same-sex harassment cases). Burns directs the Court to no other evidence that the harassment was based on sex, and the Court has found none. The Court must conclude Burns has failed to make a prima facie showing of his sexual harassment claim.

Assuming *arguendo* that Burns had made such a prima facie showing for his sexual harassment claim, the Court would conclude Defendants have proven the *Ellerth/Faragher* affirmative defense. First, where an employer has "provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense," and the plaintiff "unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . . no liability should be found against the employer who has taken reasonable care." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806-07 (1998); *see, e.g.*,

---

denies it ever took place. Moreover, Galera acknowledges that the alleged groping would violate the company sexual harassment policy. Accordingly, there is a question of fact on Burns' same sex sexual harassment claim.

(ECF No. 47 at 20).

[11] During his deposition, Burns testified that—other than he and Florence—no employee at the Haslet Depot was homosexual. (ECF No. 39 at 104).

---

*Giddens v. Cmty. Educ. Centers, Inc.*, 540 Fed. Appx. 381, 389 (5th Cir. 2013) (unpublished) (discussing the same). Here, the record contains evidence of a sexual harassment policy, which provides (i) a prohibition "on all forms of sexual harassment" and (ii) for a "complaint procedure" for reporting and resolving complaints of sexual harassment. (ECF No. 39 at 110-112). Burns testified that he received and read IMCG's sexual harassment policy during his employment. (ECF No. 39 at 80-82). Burns argues that IMCG failed to exercise reasonable care to prevent and correct sexual harassing behavior. (ECF No. 47 at 19). But, Burns concedes that IMCG reprimanded Stokely each time an instance of sexual harassment occurred prior to April 2020—with the latter November 14, 2019, reprimand warning that other incidents of sexual harassment "will result in termination."[12] (ECF No. 48 at 3-16); (*see* ECF No. 47 at 19). As to Stokely's sexual harassment of Burns, the record shows that Burns did not complain of sexual harassment from Stokely until May 2020, at which time Galera began collecting information from Burns. (ECF No. 39 at 34; 42-46; ECF No. 49 at 118-26). It is undisputed that Stokely's sexual harassment of Burns ended before April 8, 2020—before Burns began his leave of absence.

In light of the record, the Court concludes (i) that IMCG exercised reasonable care to prevent and correct promptly Stokely's sexually harassing behaviors and (ii) that Burns unreasonably failed to take advantage of any preventive or corrective opportunities that IMCG provided or to avoid harm otherwise. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, (1998); *Faragher*, 524 U.S. at 806-07. Consequently, the Court concludes IMCG has successfully proven its *Ellerth/Faragher* defense. As (i) Burns has failed to make a prima facie showing of the third element for his sexual harassment claim and (ii) had Burns met his prima facie showing,

---

[12] This reprimand also caused Stokely to forfeit certain work-related rights; required him to take additional sexual harassment prevention training; and removed Stokely from all future hiring process and application review. (ECF No. 48 at 10).

Defendants have established their *Ellerth/Faragher* defense to this claim—the Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of sexual harassment hostile work environment based on Title VII.

## C. FMLA Claims

Burns asserts two claims under the FMLA: (i) interference with leave relating to COVID and anxiety and (ii) retaliation. Burns asserts no direct evidence on any of these claims. Thus, the Court next addresses each claim under the respective three-step framework(s).

### i.    *Interference with FMLA Rights*

A prima facie case of FMLA interference requires an employee to show that:

**1)** he was an eligible employee; **2)** his employer was subject to FMLA requirements; **3)** he was entitled to leave; **4)** he gave proper notice of his intention to take FMLA leave; and **5)** his employer denied the benefits to which he was entitled under the FMLA.

*Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (citation omitted) (emphasis added in bold). As to the third element, a plaintiff seeking leave for a health condition must adduce evidence showing that she suffered a "serious health condition" that made her unable to perform the functions of her job. *Mauder,* 446 F.3d at 579 (discussing serious health condition); *see, e.g.*, *Schimek v. MCI, Inc.*, No. CIV.A. 3:05-CV-0045-P, 2006 WL 2252034, at *11 (N.D. Tex. Aug. 7, 2006) (discussing the same); 29 U.S.C.A. § 2612(a)(1)(D) (enumerating the "serious health condition" basis for FMLA leave). "The failure to provide an appropriate medical certification or recertification is fatal to a claim under the FMLA in such cases." *Ryder v. Shell Oil Co.*, 131 F. Supp. 3d 635, 641 (S.D. Tex. 2015), *aff'd*, 652 Fed. Appx. 234 (5th Cir. 2016) (internal quotation omitted). The *Ryder* court granted summary judgment in favor of an employer on a claim of FMLA interference where, *inter alia*, the plaintiff-employee failed to provide documentation to support

FMLA. *Ryder*, 131 F. Supp. 3d at 642 (appropriate [FMLA leave] documentation was never provided).

As to the fourth element, the Fifth Circuit "does not apply categorical rules for the content of the notice" and instead focuses on what is "'practicable' based on the facts and circumstances of each individual." *Lanier*, 527 F. App'x at 316 (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762-64 (5th Cir. 1995)); *see also* 29 C.F.R. § 825.303(b). "The employer is not required to be clairvoyant," but "may have a duty to inquire further if statements made by the employee warrant it." *Lanier*, 527 F. App'x at 316 (citing *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998)). "Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b). The Fifth Circuit has explained:

> Even when an employee's need for leave is unforeseeable, the regulations make clear the employee's duty to comply with the employer's policy. "When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 789 (5th Cir. 2017).

For a FMLA interference claim, the employee also must show that the violation prejudiced him. *Campos*, 10 F.4th at 526 (citation omitted). The Fifth Circuit requires courts to "conduct[ ] a case-by-case examination of whether a plaintiff has been prejudiced by noncompliance with a regulation." *Downey v. Strain*, 510 F.3d 534, 541 (5th Cir. 2007). In discussing prejudice in the FMLA interference context, another court has explained:

> "Prejudice exists when an employee losses [sic] compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, such as the cost of providing care, or suffers some loss in employment status such that equitable relief is appropriate."

*Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 873 (S.D. Tex. 2019) (block quoting *Jones v. Children's Hosp.*, 58 F. Supp. 3d 656, 669 (E.D. La. 2014)); *see, e.g.*, *Garcia v. Randolph-Brooks Fed. Credit Union*, No. SA-18-CV-00978-OLG, 2019 WL 1643741, at *3 (W.D. Tex. Apr. 16, 2019), *report and recommendation adopted*, No. CV SA-18-CA-978-OLG, 2019 WL 2565270 (W.D. Tex. May 9, 2019) (discussing the same).

Here, Defendants challenge the third element of whether Burns was eligible for FMLA leave. (ECF No. 38 at 34-35). In response, Burns offers a single sentence of substantive, applied briefing: "There is ample evidence that Burns' requests for leave, first for COVID and then for anxiety were sufficient to invoke FMLA.[]" (ECF No. 47 at 32) (internal citation omitted).

The record contains repeated requests from IMCG for Burns to submit his FMLA leave paperwork—including request to email the completed FMLA Paperwork. (*See, e.g.*, ECF No. 39 at 34-35, 42). It is undisputed that IMCG did not receive his FMLA Paperwork at any time before June 3, 2020. (ECF No. 39 at 24-25, 121). The record contains only one completed FMLA Paperwork document. (ECF No. 49 at 17-25). The completed FMLA Paperwork is dated June 3, 2020. (ECF No. 49 at 23). The record shows IMCG's fax number is 901-746-1657. (ECF No. 39 at 43, 128; ECF No. 49 at 20, 25). The record shows Burns's healthcare provider attempted to fax IMCG's fax number three times—twice on June 4, 2020, and once on June 9, 2020. (ECF No. 49 at 25). The record shows all attempts for Burns's healthcare provider to fax IMCG failed. (ECF No. 49 at 25). Otherwise, the record contains no evidence that Burns transmitted his completed FMLA Paperwork to IMCG—neither by fax nor email. Burns directs the Court to no evidence that he submitted his completed FMLA Paperwork at any time.[13] Thus, the evidence is uncontroverted

---

[13] Burns avers repeatedly that he *attempted* to have his healthcare provider submit the FMLA Paperwork, but no evidence shows such attempts resulted in successful transmission of the completed FMLA Paperwork to IMCG. (*See* ECF No. 39 at 43).

that Burns failed to submit his FMLA Paperwork to IMCG. The record contains no evidence that IMCG received support for Burns's "serious health condition" that made him unable to perform the functions of his job. *Mauder*, 446 F.3d at 579; *Ryder*, 131 F. Supp. 3d at 641.[14] Burns has not met his prima facie burden to show he was entitled to leave. Burns has failed to make a prima facie showing on the third element of his FMLA interference claim.

Burns further directs the Court to neither law nor evidence in the record in support of the fourth and fifth elements of his prima facie case. (ECF No. 47 at 31-32). Upon review of the competent summary judgment evidence, the Court has found no evidence in support of the fourth and fifth elements of Burns's prima facie case of FMLA interference. For those reasons, the Court concludes Burns has failed to carry his burden of making a prima facie case of FMLA interference. The Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of FMLA interference.

      *ii.*      *FMLA Retaliation*

To establish a prima facie case of FMLA retaliation, a plaintiff must show:

> **(1)** he was protected under the FMLA, **(2)** he suffered an adverse employment action, and **(3)** the adverse action was taken because he sought protection under the FMLA.

*Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013) (citing *Mauder,* 446 F.3d at 583) (emphasis added in bold); *see, e.g.*, *Hester*, 11 F.4th at 305 (discussing elements for discrimination and retaliation under FMLA). Regarding the first element, a failure to provide an employer with "medical evidence indicating that [the employee] was medically unable to perform her employment duties" forecloses an FMLA retaliation claim at the prima facie stage. *Comeaux-*

---

[14] Although the Parties agree Burns provided some doctor's notes regarding some of his absences in April and May 2020, there are no doctor's notes in the record.

*Bisor v. YMCA of Greater Houston*, 290 Fed. Appx. 722, 725 (5th Cir. 2008) (unpublished) (collecting cases).[15] Regarding the third element, the Fifth Circuit has explained:

> [I]t unclear whether the "causal link" requirement for FMLA retaliation claims involves the same "but for" analysis required for Title VII retaliation claims. *See Nassar,* 133 S.Ct. 2517. **It is clear, however, that the plaintiff "may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.' "** *Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 660 (5th Cir. 2012) ("Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.") (citation omitted).

*Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016) (emphasis added in bold).

Defendants challenge the first and third element(s) of Burns's prima facie burden on his FMLA retaliation claim. Burns offers a single sentence of substantive briefing: "Applying the pretext analysis set forth infra regarding Burns' sex/sexual orientation discrimination and retaliation claims, there is likewise a question of fact on Burns' FMLA retaliation claims." (ECF No. 47 at 33). Burns fails to brief any element of his prima facie burden. (ECF No. 47 at 33).

Similar to *Comeaux-Bisor*, the record shows Burns failed to provide IMCG with his FMLA Paperwork at any time. (ECF No. 39 at 24-25, 121; ECF No. 49 at 17-25). Burns directs the Court to neither law nor evidence in support of the first element of his prima facie case on FMLA retaliation; the record is devoid of evidence in support of this first element. The Court must conclude Burns has failed to meet his burden to show he was protected under the FMLA. Furthermore, Burns directs the Court to neither law nor evidence in support of the third element of his prima facie case on FMLA retaliation; the record is devoid of evidence of this third element.

---

[15] *See also Satterfield v. Wal–Mart Stores, Inc.,* 135 F.3d 973, 975 (5th Cir.1998) ("In determining whether an employee's leave request qualifies for FMLA protection, the employer must assess whether the request is based on a serious health condition, and, for that purpose, may request supporting medical documentation.") (citations and internal quotations omitted).

The Court must conclude that Burns has failed to meet his burden to show that IMCG discharged Burns because he sought protection under the FMLA. Having failed to meet his prima facie burden, the Court GRANTS Defendants' Motion for Summary Judgment as to Burns's claim of FMLA retaliation.

## V.   PRETEXT AND MIXED-MOTIVE CONSIDERATIONS

### A. Traditional McDonnell Douglas Pretext

As determined above, Burns has failed to meet his burden on at least one essential element for each of his claims asserted under Title VII and the FMLA. Thus, Burns has failed to make out a prima facie case for discrimination, retaliation, hostile work environment, and interference as required, and the burden does not shift to the Defendants. *See, e.g., Haynes v. Pennzoil Co.*, 207 F.3d 296, 301 (5th Cir. 2000) (ending its analysis and affirming district court's grant of summary judgment after concluding plaintiff "failed to establish a prima facie case of racial discrimination under Title VII"); *Owens,* 33 F.4th at 835 (applying the *McDonnell Douglas* framework to a retaliation claim under Title VII and 42 U.S.C. § 1981). Nevertheless—assuming *arguendo* that Burns met his burden to show a prima facie case—IMCG produced evidence of a legitimate, non-discriminatory, and non-retaliatory reason for his discharge. *Owens*, 33 F.4th at 835 (discussing pretext in the discrimination context); *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (discussing pretext in the retaliation context); *see Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). IMCG produced evidence of one overarching reason for Burns's discharge—he was "no call, no show" for three consecutive work days.

Next, under the third step of the framework(s), Burns must counter the no call, no show reason with "substantial evidence" for his discharge as pretextual. *See Owens*, 33 F.4th at 825; *see*

*also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). For pretext in the discrimination context, the Fifth Circuit has explained:

> The plaintiff must rebut each nondiscriminatory reason articulated by the employer. *Wallace*, 271 F.3d at 220. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Id.*; *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002).

*Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (addressing discrimination claims under Title VII and the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978). "Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct." *Vaughn*, 665 F.3d at 637. For pretext in the retaliation context, the Fifth Circuit has explained: "[a]n employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action." *Hague v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 336 (5th Cir. 2014) (citing *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477, 479–80 (Tex. 2001)). The "but for" causation standard is more difficult to prove than prima facie causation. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) ("This court has explicitly held that the "causal link" required in prong three of the prima facie case for retaliation is not as stringent as the "but for" standard."); *see Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808-09 (5th Cir. 2007) (discussing "very close" temporal proximity as potentially sufficient to meet prima facie standard but insufficient to meet "but for" causation standard). On pretext, the Fifth circuit has explained:

> "[T]he ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th

Cir. 2000). Thus, evidence must be of sufficient "nature, extent, and quality" to permit a jury to reasonably infer discrimination. *Id.* at 903.

. . .

[E]ven if Owens has provided sufficient evidence for a jury to disbelieve Circassia's explanation for her termination, that is not necessarily enough.[] **Employers are "entitled to be unreasonable" in terminating their employees "so long as [they] do[ ] not act with discriminatory animus."** *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). Thus, **it is the employee's burden to create a fact dispute as to reasonableness that could give rise to an inference of discrimination.** *Id.* As the Supreme Court explained in *Reeves*, **"there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."** 530 U.S. at 148, 120 S.Ct. 2097.

*Owens*, 33 F.4th at 826 (footnote omitted) (emphasis added in bold).

The Parties merge their respective briefing regarding pretext for all of Burns's claims, so the Court addresses the same, jointly. Defendants offer four bases that "Burns cannot point to evidence indicating [the discharge for no call, no show] was pretextual": (i) Burns conceded his relationship with a supervisor, and not Burns's sexual orientation, motivated the discharge; (ii) the record shows Burns was no call no show for three consecutive work days; (iii) failure to report for work was the only motivating factor in the discharge; and (iv) IMCG has discharged other employees for no call, no show. (ECF No. 38 at 27-30). In response, Burns asserts (i) Burns was not no call, no show because he texted his supervisor of his absence; (ii) Galera and Hoof either knew or assumed Burns was homosexual; (iii) IMCG failed to follow its progressive discipline policy; (iv) the timing of his discharge was suspicious; and (v) evidence relating to Hoof of laughing at gay jokes and "scoff[ing]" at a separate lawsuit brought by a different gay employee constituted pretext. (ECF No. 47 at 26-30).[16]

It is undisputed that IMCG has a three-day no call, no show policy:

---

[16] Burns's briefing asserts no "disparate treatment" argument, so the Court pretermits discussion of the same. (ECF No. 47 at 26-30).

### 4.7    Job Abandonment

If an employee fails to show up for work or call in with a reason for their absence for a period of three consecutive days, they will be considered to have abandoned their job and voluntarily terminated their employment. If you can't give us a call – find somebody who can.

(ECF No. 39 at 114) (emphasis in original). The record contains IMCG's progressive disciplinary policy, which reserves its right to issue a verbal notice and written notice "as it sees fit." (ECF No. 49 at 4-5).[17] However, it is undisputed that IMCG considered employees who failed to appear for work for three consecutive days as having *abandoned* the job—"voluntarily terminated." (ECF No. 39 at 114).[18] The record contains evidence that Burns texted Stokely that he would be absent from work on "May 28, June 1st, or June 2nd." (ECF No. 49 at 62). However, there is no evidence in the record that Stokely reported those absences to Hoof or Galera. It is undisputed that only Hoof and Galera were involved in the decision to discharge Burns. (ECF No. 39 at 56, 67). Although Galera asked Burns about his leave on May 28, 2020, (ECF No. 39 at 34), Burns did not communicate with Galera from May 28, 2020 to June 2, 2020, (ECF No. 39 at 42-46). No evidence in the record shows Burns apprised Galera or Hoof of his absences for May 28, 2020 to June 1, 20202. Thus, the record shows Burns was no call, no show for three consecutive work days as to the two decisionmakers for his discharge—Burns and Galera.

The record further shows that neither Burns nor Galera were motivated by discriminatory animus in discharging Burns. Although Burns testifies that Hoof laughed about a suit brought by a different gay employee, (ECF No. 49 at 57-58), Burns unequivocally conceded that sexual orientation was not a factor in the discharge during his deposition:

> [Question]:    Do you have any reason to believe that Mr. Hoof has a negative view of people who are gay?

---

[17] As discussed above—IMCG implemented progressive discipline with Stokely's sexual harassment allegations.
[18] No evidence in the record shows IMCG used its progressive discipline policy on employees who were no call, no show for three days.

[Burns]:        I do not.

[Question]:     Do you have any reason to believe that Mr. Hoof has any negative
                view of same-sex relationships?

[Burns]:        I do not.

[Question]:     Then if you -- if you don't believe that he's – **you don't have any
                reason to believe that he has got any animus towards gay people
                or people who are in same-sex relationships, then why do you
                think your sexual orientation was a factor in your termination?**

[Burns]:        Because when it comes to business, everything changes. **Whenever
                your boss is your partner, which it worked for so many years, so
                many years, up until Chris was not -- was told to -- that it was a
                conflict of interest and he needed to know. [] Well, if it's a
                conflict of interest, and then I get let go a month later, I don't
                believe that he's sexually, you know, discriminate**. But when it
                comes to business, absolutely.

[Question]:     So I -- just to make sure I understand what you're saying, what --
                **what do you contend was his motivation?**

[Burns]:        **Having an employee working for their partner.**

[Question]:     Okay. **So it wasn't your sexual orientation on its own; it was your
                -- the fact that you were involved in a relationship with your
                supervisor?**

[Burns]:        **Yes.**

(ECF No. 39 at 101-02) (emphasis added in bold). Neither evidence in the record nor Burns's

briefing asserts Galera was motivated by discriminatory animus in the decision to discharge Burns.

It is undisputed that IMCG discharged other employees for no call, no show. (ECF No. 39 at 67-

68).[19]

_____

[19] Specifically, Hoof's affidavit states:

> I have approved the termination of other employees in my region for job abandonment, including
> by way of example Carlos Millan, terminated for abandoning his job in May 2018, Curtis Cannon,
> terminated for abandoning his job in May 2019, and Christopher Pittman, terminated for abandoning
> his job in May 2023. I am unaware of any of those individuals identifying as gay. [. . .] In those

Although "[p]laintiffs may combine 'suspicious timing with other significant evidence of pretext' to survive summary judgment, the record contains no significant evidence—nor substantial evidence—of pretext. *Owens*, 33 F.4th at 835 (quoting *Saketkoo*, 31 F.4th at 1003); *see, e.g.*, *Evans*, 246 F.3d at 356 (discussing the same). Burns offers no briefing as to FMLA-related discriminatory animus that was pretextual basis for IMCG's discharge. On review of the record, the Court has found no evidence to show Burns's discharge for no call, no show was pretextual. Burns has failed to carry his burden under the third step of the framework(s) to show that IMCG's reason for discharging Burns—no call, no show for three days—was false or unworthy of credence. The Court concludes Burns has failed to show pretext.

### B. Mixed-Motive Analysis of Pretext

The Fifth Circuit "has adopted use of a 'modified *McDonnell Douglas* approach' in cases where the mixed-motive analysis may apply." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The modified *McDonnell Douglas* approach differs from the traditional *McDonnell Douglas* approach after the plaintiff has made a prima facie showing and defendant has responded with a legitimate, nondiscriminatory reason for the adverse employment action. *Keelan*, 407 F.3d at 341.

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Rachid*, 376 F.3d at 312 (internal quotation marks and citations omitted). The *Rachid* Court further recognized:

---

circumstances like in Mr. Burns' circumstances, the decisions were made solely based on the employee's failure to report as directed and/or scheduled.

(ECF No. 39 at 67-68).

---

MEMORANDUM OPINION AND ORDER                                    Page **41** of 43

> "A mixed-motives case arises when an employment decision is based on a mixture
> of legitimate and illegitimate motives.... If the employee proves the unlawful reason
> was a motivating factor, the employer must demonstrate that it would have taken
> the same action in the absence of the impermissible motivating factor."

*Rachid*, 376 F.3d at 309–10 (quoting *Louis v. E. Baton Rouge Parish Sch. Bd.,* 303 F.Supp.2d 799, 801–04 (M.D. La. 2003) (citing *Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir.1999) (noting that a mixed-motives analysis applies "where the evidence is sufficient to allow a trier to find both forbidden and permissible motives.") (quotations and citations omitted)).

Here, Burns's pleading states "[a]lternatively, Plaintiff Burns seeks declaratory relief because sex/sexual orientation was a motivating factor and thus, sex/sexual orientation was at least a mixed motive in the termination. Plaintiff Burns seeks declaratory relief and attorney fees pursuant to 42 U.S.C. § 2000e-2(m)." (ECF No. 40-1 at 3).[20] Neither Defendants nor Burns brief the application of mixed-motive analysis to Burns's claims. Nevertheless, under such analysis, the Court would reach the same result as above regarding the traditional pretext framework(s)—that

---

[20] Burns does not appear to assert an independent claim for declaratory judgment. (*See* ECF No. 40-1). If Burns had asserted an independent claim for declaratory judgment that sex/sexual orientation was a motivating factor in his discharge, such a claim would be subsumed within his Title VII sex discrimination claim as a "mirror image" of that sex discrimination claim.

The Declaratory Judgment Act enables courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 USC § 2201(a). It "confers discretion on the courts rather than an absolute right on a litigant." *Wilton v. Seven Falls Co.*, 515 US 277, 287 (1995) (cleaned up). A declaratory judgment thus serves the purpose of affording "one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued," or providing "a means of settling an actual controversy before it ripens into a violation of the civil or criminal law, or a breach of contractual duty." *Rowan Companies Inc. v. Griffin*, 876 F2d 26, 28 (5th Cir. 1989) (citations omitted).

"[D]istrict courts in this Circuit regularly reject declaratory judgment claims seeking the resolution of issues that are the mirror image of other claims in a lawsuit." *Amerisure Ins. Co. v. Thermacor Process, Inc.*, No. 4:20-CV-01089-P, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021) (internal quotation omitted) (collecting cases). This is so because "a declaratory judgment may not serve a 'useful purpose'" if the court isn't being asked to adjudicate anything new. *Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp*, 824 F3d 507, 523 (5th Cir. 2016). Courts in the Fifth Circuit thus regularly reject claims for declaratory judgment that seek nothing more than resolution of issues already stated in the lawsuit. *See, e.g.*, *Ecoquij-Tzep v. Le Arlington, Inc.*, No. 3:16-CV-625-BN, 2018 WL 1737658, at *3 (N.D. Tex. Apr. 10, 2018) (collecting cases); *American Equipment Co. v. Turner Brothers Crane and Rigging LLC*, 2014 WL 3543720, *4 (S.D. Tex.) (collecting cases).

---

MEMORANDUM OPINION AND ORDER                                                    Page **42** of 43

the record does not support IMCG's discharge of Burns for no call, no show was pretextual. As discussed above, the record is devoid of evidence that sex, sexual orientation, or FMLA-related discriminatory animus was a motivating factor in Burns's discharge. The record contains no evidence of an impermissible motivating factor or otherwise illegitimate motive for Burns's discharge. Burns fails to meet his burden to show pretext under the mixed-motive analysis.

## VI.   MOTION FOR LEAVE AND CORRESPONDING MOTION TO STRIKE

Last, Burns moves for leave to file a motion to strike the Supplement to Defendant's Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment, (ECF No. 54), because Defendants had not sought leave in filing the Supplemental Appendix. (ECF No. 55). The Court GRANTS Burns's motion for leave. (ECF No. 55). However, the Court has not considered any portion of the Supplemental Appendix in entering this summary judgment determination. (*See* ECF No. 54). For that reason, the Court DENIES Burns's motion to strike as moot.

## VII.   CONCLUSION

For the reasons enumerated hereabove, the Court GRANTS Defendants' Motion for Summary Judgment on all of Burns's claims. (ECF No. 37). The Court GRANTS Burns's motion for leave and DENIES Burns's Motion to Strike as moot. (ECF No. 55). The Court shall enter a final judgment by separate filing. Fed. R. Civ. P. 54.

**SO ORDERED.**

8th day of March, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE